**SHEDD BARTUSH FOODS, Appellant,**

v.

**Deleta BRATCHER, James R. Yocom, Commissioner of Labor, and Custodian of Special Fund, and Workmen's Compensation Board of Kentucky, Appellees.**

Court of Appeals of Kentucky.

May 26, 1978.

Armer H. Mahan, Jr., Louisville, for appellant.

Kenneth E. Hollis, Gen. Counsel, Dept. of Labor, Frankfort, John Riehl, Jr., Dept. of Labor, Louisville, for Special Fund.

Paul K. Murphy, Louisville, for appellee Deleta Bratcher.

Before MARTIN, C. J., and REYNOLDS and WILHOIT, JJ.

MARTIN, Chief Judge.

This is an appeal from a judgment of the Jefferson Circuit Court affirming an award by the Workmen's Compensation Board of a sixty percent disability to the claimant. In seeking review of the Board's decision in the circuit court, the employer objected to the amount of the award as well as the apportionment of the award. On the appeal now before us, the only issue argued by appellant is the apportionment of liability between the employer and the Commissioner of Labor as Custodian of the Special Fund.

The appellant, Deleta Bratcher, was injured in a work-related accident while em-

ployed by appellant Shedd Bartush Foods in Louisville. She was examined by Dr. John Glover, a Nashville, Tennessee orthopedic surgeon, and given a conservative program of rest and muscle relaxants as treatment for her injury. After a period of time, Dr. Glover determined that this medical program was not successful in treating his initial diagnosis that Mrs. Bratcher had suffered a chronic lumbar sprain. Therefore, surgery was performed in July of 1975, at his recommendation. Dr. Glover described the surgical procedure as decompression of the first sacral nerve. He further stated that he would describe the procedure as an operation to remove pressure on a nerve rather than the more commonly described procedure to relieve pain in the back caused by problems connected with the disc. During the operation, Dr. Glover found Mrs. Bratcher had some deformity in the bone structure in the lower part of her back, in the area where her back joins her pelvic bone. Dr. Glover testified further that he did not know if there was a specific medical term or description, other than a congenital deformity, that would describe his observations during the operation. He did state that x-rays would not ordinarily reveal this type of deformity. Specifically, he described his findings as follows:

> Her lower vertebras in the lumbar area right above her pelvis were overlapping just like shingles, she didn't have the normal space between them and the fifth lumbar vertebra on the right was actually deformed and markedly thickened from front to back and this made her back much more susceptible to an injury. It prevented the nerve at that level from having as much space as a normal one does and I feel that her injury twisted this vertebra to the extent that it loosened up and caused continued, repeated pinching of the nerve as she carried out her activities.

Throughout the period of treatment, Mrs. Bratcher had been receiving benefits under workmen's compensation. Before a final award was made, Mrs. Bratcher was examined by two other orthopedic surgeons. Both physicians performed evaluation examinations and did not prescribe to Mrs. Bratcher any medical treatment for her injuries. A major reason for the evaluation examinations was to determine if Mrs. Bratcher was suffering from some prior medical problem that would shift part of the burden of her workmen's compensation payments from her employer to the Special Fund.

Dr. Andrew H. Miller, a Nashville, Tennessee orthopedic surgeon examined Mrs. Bratcher and took x-rays of her back and pelvic area. He stated there was a possibility of a preexisting medical condition. He concluded in his testimony, however, that having not seen Mrs. Bratcher before she was operated on by Dr. Glover, he could not now diagnose her initial injury. He testified that the x-rays revealed a prior laminectomy. From his examination he could observe the incision made by Dr. Glover, but he did not refute the testimony of Dr. Glover concerning his observations during surgery.

The second evaluation examination was performed by Louisville orthopedic surgeon Dr. Ernest Eggers who was appointed by the Board. K.R.S. 342.121. His testimony was sketchy at best. He stated that Mrs. Bratcher had suffered from no dormant nondisabling condition prior to her job-related injury. He concluded that her present disability was due solely to the laminectomy and probable disc operation performed by Dr. Glover.

██ Disregarding totally the observations of Dr. Glover during surgery, the Board adopted the theory of Dr. Eggers and found the employer totally liable for the injury to Mrs. Bratcher. We disagree. We believe that the Board was clearly erroneous in totally disregarding the testimony of Dr. Glover. Dr. Glover was the only physician who observed Mrs. Bratcher's condition. As he testified, the condition was not easily seen on x-rays. When a conflict in evidence arises and the treating physician is in a better position to observe the condition than physicians who perform only evaluation examinations, then his testi-

mony must be given greater weight than theirs.

The proposed contribution by the Special Fund to Mrs. Bratcher's award is founded upon K.R.S. 342.120. The statute provides that the Special Fund shall be liable for a ". . . condition which was aroused or brought into disabling reality . . ." by the work-related injury. The appellant has properly joined the Special Fund as a party to this appeal. See *Yocom v. Jordan Auto Parts Co.*, Ky., 521 S.W.2d 519 (1975). The terminology of this section of the statute has been subject to great discussion. The question of prior work-related injuries has long since been put to rest. The purpose of the Special Fund had always been to more equally distribute the costs of assisting in the recovery of those who receive work-related injuries. It was not until *Yocom v. Gibbs*, Ky., 525 S.W.2d 744 (1975), that it was held the Special Fund was liable for an apportioned award because of the arousal in an injured employee of a dormant, preexisting congenital defect. A further step in clarifying the legislative intent of this statute was *Yocom v. Jackson*, Ky.App., 554 S.W.2d 891 (1977), the court stating at page 896:

> Often, an employee's disability resulting from an industrial injury would have been less "but for" pre-existing mental or physical characteristics of the employee. For example, the degree of occupational disability resulting from an injury to an employee's left hand will depend upon a pre-existing physical characteristic, namely, whether the employee is left handed or right handed. It is clear that the term "condition" in KRS 342.120 is not used in the "but for" sense . . .
> It was not the intention of legislature to relieve employers from the natural consequences of their employees' work related injuries merely because the degree of disability was affected by some physical or mental characteristic which ordinarily would never have affected the employees' ability to work.

We do not believe the Board applied this standard in the present case when it found Mrs. Bratcher had no preexisting difficulty when she received a work-related injury. In support of their position, the Special Fund argues that where there is a conflict in the medical evidence before the Board, its decision is conclusive upon the court. K.R.S. 342.285(3). We disagree. In *Cabe v. Splash Dam By-Products Coal Corp.*, Ky., 416 S.W.2d 361 (1967), the court was faced with facts similar to the present case. The Board determined there had been no existing disability or pre-existing condition which had been aroused into a disabling reality by the work-related traumatic injury to the employee's back. The Board's decision had been based upon testimony of the Board-appointed physician. The same is true in the present case. Dr. Eggers did not discuss the case with Dr. Glover, who performed the operation, nor did he examine Mrs. Bratcher for the purpose of determining if she did have a congenital defect prior to her injury. As pointed out in *Collins v. Castleton Farms, Inc.*, Ky.App., 560 S.W.2d 830, 24 Ky.L.Summ. 12 (1977), the Board can not disregard competent evidence of probative value even when there is a conflict. Where the evidence is of equal value, we do not intend to interject on review our opinion, even though we may disagree with the conclusion reached by the Board. But where the testimony, as here, of the treating physician who performed the operation, observed the condition, explained in considerable detail why such a condition can not be quickly identified in x-rays, and is supported in part by a second physician, is totally disregarded, the finding of the Board will be set aside. The opportunity to observe and describe the injury far outweighs the conclusion of the Board-appointed physician in his evaluation examination.

The judgment of the Jefferson Circuit Court is reversed.

All concur.